SUPREME COURT OF THE STATE OF NEW YORK
FIFTH JUDICIAL DISTRICT

In Re Fifth Judicial District Asbestos Litigation

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ONONDAGA

This Document Applies to:

DOUGLAS POKORNEY
Index No. 2006- 3087

**Decision and Order**
McCarthy, James W., AJCS, Presiding

Appearances:
For Plaintiff Douglas Pokorney:
Jerome K. Block, Esq.
Levy, Phillips & Konigsberg, LLP
800 Third Avenue
New York, New York 10022

Keith R. Vona, Esq.
Lipsitz & Ponterio, LLP
135 Delaware Avenue, Fifth Floor
Buffalo, New York 14202

For Defendant, Foster Wheeler, Inc.:
Stephen Novakidis, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
Three Gateway Center, 12th Floor
Newark, New Jersey 07102

The above-referenced matter is before this court pursuant to defendant, Foster Wheeler Energy Corporation, Inc.'s [hereinafter Foster Wheeler] motion to for judgment and/or new trial pursuant to New York Civil Procedure Law and Rules § 4404[a]. After receipt of plaintiff's opposition papers, the matter was taken on submission. Having reviewed the voluminous submissions of the parties, for the reasons set forth below, this court makes the following Findings of Fact and Conclusions of Law.

I.    Findings of Fact:

The facts underlying the instant motion arise out of the plaintiff's alleged exposure to asbestos while serving as boilerman technician and oiler aboard the USS Roan, a Gearing Class destroyer from June of 1962 to September of 1965. Following settlement or dismissal of all but one of the named defendants, trial was commenced in the instant action on June 23, 2008 against the remaining defendant, Foster Wheeler. Plaintiff rested on July 2, 2008, and at the close of proof, Foster Wheeler moved for a directed verdict, pursuant to New York Civil Practice Law and Rules § 4401, which motion was denied by the court. On July 8, 2008 at the close of all evidence, Foster Wheeler renewed its motion for a directed verdict. Again, this court denied the motion.

On Thursday, July 10, 2008, the jury in this matter returned a verdict in favor of the plaintiff, apportioning thirty-one percent of the total fault to Foster Wheeler, fifteen percent of the fault to Garlock, and the remaining fifty four percent of to manufacturers of other equipment aboard the USS Roan. Thereafter, by Notice of Motion dated July 25, 2008, Foster Wheeler moved, pursuant to New York Civil Practice Law and Rules § 4404[a] to set aside the jury's verdict. Foster Wheeler's motion is predicated on the following:

> Based on all of the evidence, Foster Wheeler respectfully requests that this Court set aside the verdict on the following grounds. First, Foster Wheeler, as a matter of law, did not owe a duty to warn Mr. Pokorney regarding the hazards of products that it did not design, manufacture, specify, recommend, sell, supply, install, or over which it exercised any control. Second, based on all of the evidence set forth in this case Foster Wheeler was entitled to immunity under the Government Contractor defense. Third, Plaintiff failed, as a matter of law, to meet his burden to prove that any acts or omissions on the part of Foster Wheeler were a proximate cause of his injuries. Fourth, the undisputed evidence confirms that, pursuant to the best scientific and medical knowledge as it existed during all times at issue in this case, there was no recognized asbestos hazard from Navy boilers to Navy boiler tenders like Mr. Pokorney – and therefore Foster Wheeler's conduct was as a matter of law reasonable based upon the state of the art knowledge of the day. Finally, the United States Navy

2

should have been included on the verdict sheet which would have allowed the jury to allocate an equitable share of any fault to the Navy.

[Defendant's Counsel's Affirmation at ¶ 5].

In opposition, counsel for the plaintiff argue, in sum and substance that:

[1]     Foster Wheeler fails to comprehend that the asbestos dangers of which it had a duty to warn were dangers associated with the use of Foster Wheeler's own boilers. Foster Wheeler's boilers required insulation and gaskets to work safely and properly; Foster Wheeler knew or should have known that such insulation and gaskets would be made from asbestos and would have to be disturbed by boilermen, like Doug Pokorney, in the maintenance and/or repair of its boiler.

[2]     Foster Wheeler once again argues that the Court should have instructed the jury on the government contractor defense, which is based upon speculation that, if Foster Wheeler had attempted to warn about asbestos, the Navy would have prohibited such warnings. However, there was a complete lack of evidence of any federal specification that prohibited Foster Wheeler (or any other manufacturer) from warning about asbestos. There was also a complete absence of evidence of any conflict between any federal specification and Foster Wheeler's state law duty to warn.

[3]     Foster Wheeler claims that, as a matter of law, it was not negligent in failing to provide any warnings about the dangers of asbestos from the use of its boilers. However, the evidence overwhelming established, and was certainly sufficient for the jury to find, that Foster Wheeler was negligent in not only failing to warn about asbestos in 1943 when its boilers were installed on the USS Roan, but also in failing to issue post-sale warnings, up through and including 1962 through1965, when Mr. Pokorney served as a boilerman on the USS Roan.

[4]     Foster Wheeler overlooks the fact that Mr. Pokorney testified that he didn't know about the dangers of asbestos and that he would have followed warnings if they had been given. Given the gravity of the dangers of asbestos, Foster Wheeler had a duty to issue prominent warnings designed to get the attention of the ultimate product user. Instead, Foster Wheeler failed to provide any asbestos warnings. As a result, Mr. Pokorney and his fellow servicemen aboard the USS Roan had no knowledge as to the hazards of asbestos and no information as to how to minimize these harmful exposures.

[5]     Foster Wheeler renews its argument that the Navy should have been listed on the verdict sheet for purposes of Article 16. This matter was briefed prior to trial and the Court should adhere to its well-reasoned and thorough written decision dated July 2, 2008.

[Plaintiff's Counsels' Memorandum of Law at pp.1-5].

Thus as cogently and concisely framed by counsel for the parties, the court turns its attention to the issues before it.

3

II.     Conclusions of Law:

New York Civil Practice Law and Rules § 4404[a] provides, in pertinent part:

**(a) Motion after trial where jury required.** After a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence, in the interest of justice...

N.Y.Civ.Prac.L.&R. § 4404[a] (McKinney 2007).

A.      Duty To Warn:

In support of its motion to set aside the verdict, Foster Wheeler first argues, in sum and substance that when the boilers it manufactured left its control, they did not contain asbestos, and that any exposure to asbestos came from products it neither manufactured or installed. Thus, since its product did not, at the time it left Foster Wheeler's control, contain asbestos, it did not owe the plaintiff a duty to warn. More particularly, counsel for the moving defendant argues:

6.      Plaintiff alleged at trial that Foster Wheeler should have warned Mr. Pokorney about the hazards of asbestos-containing products, *manufactured by other companies and applied by others to its equipment after its acceptance by the Navy.* Under New York law Foster Wheeler did not owe a legal duty to warn about the alleged hazards of asbestos products designed, manufactured, specified, recommended, sold, supplied, installed, and totally controlled by others.

7.      The allegedly dangerous product in this case was the asbestos-containing exterior thermal insulation that the Navy specified and required be applied on, among many other surfaces, pipes and equipment aboard its ships, including boilers it specified, ordered and purchased from Foster Wheeler. The uncontroverted evidence established that Foster Wheeler did not contribute to any alleged defect in the insulation; Foster Wheeler had no control over the production of the insulation; Foster Wheeler did not produce the insulation; Foster Wheeler had no role in placing the insulation in the stream of commerce; and Foster Wheeler derived no benefit from the sale of the insulation. If warnings were owed to Plaintiff, those warning were owed by the manufacturers of the asbestos-containing exterior insulation; to the extent the Navy would permit warnings or the Navy. Foster Wheeler had no duty, opportunity or obligation to warn about any hazards of products designed, manufactured, specified, recommended, sold, supplied, installed, and totally controlled by others...

9.      As the uncontroverted testimony in this case proved, Foster Wheeler was ordered to manufacture 72 boilers for the United States Navy. Foster

4

Wheeler was ordered to manufacture these boilers based on the precise design specifications created by Babcock & Wilcox along with Gibbs & Cox and the Navy. Plaintiff's own expert, testified regarding the purchase order of the 72 boilers to be manufactured by Foster Wheeler. Mr. Moore detailed the precise specifications referenced in the purchase order along with the requirement that Babcock & Wilcox was to supply the technical manuals and design drawings for the boilers. (See testimony of Mr. Moore, Exhibit C at Pg. 816, Ln. 25 to Pg. 821, Ln. 12). Foster Wheeler respectfully argues that New York law does not create a legal duty to warn about the alleged hazards of asbestos products designed, manufactured, specified, recommended, sold, supplied, installed, and totally controlled by others.

[Defendant's Counsel's Affirmation at ¶ 6-7,9 [emphasis original]].

In opposition, counsel for the plaintiffs argue:

It is black-letter law in New York that "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." Liriano v. Hobart Corp., 92 N.Y.2d 232, 237, 677 N.Y.S.2d 764 (1998). Accordingly, when Mr. Pokorney had to cut asbestos insulation off of the steam drum of the Foster Wheeler boiler so that he could change the gasket (Ex. 13, at 134-142), when he would rub up against the insulation every time he entered the steam drum (Ex. 13, at 130; Ex. 8, at 287-88), when he would scrape off asbestos gaskets that lined boiler entry ways (Ex. 13, at 128-29, 130-31), and when he cleaned out the firebox of the boilers (Ex. 13, at 124-128), he was encountering the "latent dangers" of asbestos resulting from "foreseeable uses" of the boiler of which Foster Wheeler "knew or should have known". Liriano, 92 N.Y.2d at 237. This is squarely down the middle of the duty to warn under New York law...

The facts presented in this case clearly established that Foster Wheeler knew or should have known that asbestos-containing materials (including insulation and gaskets) would be applied to its boilers and that boilermen, like Doug Pokorney, would have to disturb these materials in the normal use of its boilers. Accordingly, under New York law, Foster Wheeler had a duty to warn about the dangers of asbestos associated with the use of its boilers...

It makes no difference that Foster Wheeler did not manufacture, supply or install the particular asbestos insulation or gaskets to which Mr. Pokorney was exposed. In an analogous case (Tuttle), this Court previously determined that a jury was permitted to find that a manufacturer of a pump sold to the Navy had a legal duty to warn about the dangers associated with asbestos-containing gaskets that were used on the pumps, but that the pump manufacturer neither supplied, manufactured nor installed...

[Plaintiffs' Counsels' Memorandum of Law at pp. 12-13].

With respect to the issue therefore, with the exception of the unreported decision of Justice Marcy Friedman, there does not appear to be controlling New York precedent concerning a

manufacture's duty to warn about exterior insulation it neither manufactured or installed. As counsel for the plaintiff correctly point out, this court relying on the Appellate Division, First Department decision in Berkowitz v. A.C.&S., 288 A.D.2d 148 (1st Dept. 2001) previously held that where a pump was required to have an asbestos gasket, that there was an issue of fact precluding summary judgment, despite the fact that at the time of the plaintiff's exposure, the gasket was not one originally installed by the defendant. This case is, perhaps one step removed, that is there is no indication that the defendants in this case either manufactured or installed the asbestos to which the plaintiff was exposed. Plaintiff nevertheless argues that the court's charge and the jury's finding was a logical extension of Berkowitz, insofar as the exterior asbestos insulation in this case was both required by the Navy and necessary in order for the product to properly function.

In Berkowitz v. A.C.&S., supra, the Appellate Division, First Department held:

> An issue of fact as to whether these pumps contained        asbestos is raised by defendants' admission that Worthington sometimes used gaskets and packing containing asbestos; plaintiff Tancredi's production of a Worthington manual for the power plant where he worked referring to an asbestos component in one of its pumps at the plant; the testimony of defendants' witness that Worthington had 'specifications for sale of product to the government which required asbestos use'; the absence of evidence that Worthington deviated from the government's specifications in the pumps it installed in ships during the relevant time periods; and the testimony of certain of plaintiffs that they observed the hand making of asbestos gaskets. Nor does it necessarily appear that Worthington had no duty to warn concerning the dangers of asbestos that it neither manufactured nor installed on its pumps. While it may be technically true that its pumps could run without insulation, defendants' own witness indicated that the government provided certain specifications involving insulation, and it is at least questionable whether pumps transporting steam and hot liquids on board a ship could be operated safely without insulation, which Worthington knew would be made out of    asbestos ( compare, Rogers v. Sears, Roebuck & Co., 268 A.D.2d 245, with Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289)...

Berkowitz v. A.C. and S., Inc., supra at, 149-150.

While there is no controlling precedent in New York following Berkowitz, as counsel for the plaintiff's correctly point out, the holding has been followed by the courts of other jurisdictions in cases factually analogous to the instant action.

In Sether v. Agco Corp., — F.Supp.2d—, (U.S.D.Ct. S.D. Ill, 2008), the court held:

> To the extent GE seems to argue that it owed no duty to warn, the Court does not agree. According to GE, it manufactured marine steam turbines without any thermal

insulation material on them and shipped the turbines with only a coat of paint on the surface of the metal, so that any thermal insulation material would have been supplied and installed by the shipbuilders at the shipyard. It is well settled, of course, that a manufacturer of a product has a duty to provide those warnings or instructions that are necessary to make its product safe for its intended use. See Restatement (Second) of Torts § 402A cmt. h (1965) ('Where ... [the seller of a product] has reason to anticipate that danger may result from a particular use ... he may be required to give adequate warning of the danger ..., and a product sold without such warning is in a defective condition.'); Berkowitz v. A.C. & S., Inc., 288 A.D.2d 148, 733 N.Y.S.2d 410, 411-12 (N.Y.App.Div.2001) (affirming a denial of a motion for summary judgment brought by a manufacturer of pumps used on USN ships on the grounds that the defendant owed no duty to warn of the dangers of asbestos that it neither manufactured nor installed on its pumps; although the pumps could function without insulation, the governmental purchaser of the pumps had provided certain specifications involving insulation of the pumps, and it was questionable whether the pumps could be operated safely without insulation, which the defendant knew would be made out of asbestos).

Id.

In, Simonetta v. Viad Corp., 137 Wash.App. 15, 151 P.3d 1019 (Wash.App. Div. 1, 2007), review granted, 162 Wn. 2d 1011, the Court of Appeals of Washington, District One, held:

Viad contends that it is not liable because it must only warn of the dangers 'inherent in its product.' Asbestos was not a Griscom Russell product. But, the danger of asbestos exposure is 'inherent' in the use of its product, because the evaporators were built with the knowledge that insulation would be needed for the units to operate properly and that workers would need to invade the insulation to service the units. Griscom Russell also knew that the Navy used asbestos for thermal insulation. A product designed so that use requires the invasion of asbestos insulation has a known inherent danger because the particles become respirable which exposes people nearby to their toxic nature.

Id. at 22, 151 P.3d 1023.[1] [see also, Braaten v. Saberhagen Holdings, 137 Wash.App. 32, 151 P.3d

---

The court goes on to hold, distinguishing the New York Court of Appeals' decision in Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289 (1992), relied on by defendant's counsel at trial and on the instant motion, finding: "We hold that when a product requires the use of another product and the two together cause a release of a hazardous substance, the manufacturer has a duty to warn about the inherent dangers. Griscom Russell had a duty to warn about the dangers of respirable asbestos released during the reasonable use of its product.[footnote omitted]. As a result, we reverse the summary judgment and remand the case for further proceedings." Id. at 1031, 151 P.3d 1027.

1010 (Wash.App. Div. 1, 2007),   review granted, 162 Wn. 2d 1011;[2] accord, Ingwesen v. IMO Industries, Inc., —P.3d.—, 2008 WL 1932778 (Wash.App. Div. 1, 2008); Anderson v. Asbestos Corp. Ltd, —P.3d—, 2008 W.L. 3273856 (Wash.App. Div. 1, 2008).

Contrary to defendant's argument, the court finds that its ruling with respect to defendant's duty to warn is consistent with Berkowitz, supra and its out of state progeny cited above. In the instant action, on the issue of defendant's duty to warn, this court instructed the jury as follows:

> [A] manufacturer who knew or reasonably should have known that a product manufactured by another will be used on, used in or applied to its product is under a duty to issue such warnings as a reasonably prudent manufacturer would recognize to be necessary to make the manufacturer's product reasonably safe for its normal or intended use.

[Trial Transcript, July 9, 2008 at 1871]. In the instant action, the court finds that there was ample evidence that Foster Wheeler knew or reasonably should have know that its boilers installed aboard the USS Roan required insulation for the units to operate properly, and that the United States Navy utilized asbestos as insulation.  Thus in, light of the foregoing, this court finds its charge and the jury's finding consistent with, and a logical extension of Berkowitz, and accordingly denies defendant's motion to set aside the verdict on the first proffered ground.

[B]   Government Contractor Defense:

Counsel for Foster Wheeler next argues that the court erred in finding, as a matter of law, that it was not entitled to a charge on  its "government contractor defense." [see, e.g. Boyle v. United Technologies Corp., 487 U.S. 500 (1988)].   In support of its motion, counsel for Foster Wheeler argues:

> Plaintiff seeks to impose state law standards on claims that the United States Supreme Court has stated, unequivocally, are pre-empted by federal law.  It is indisputable in this case that Foster Wheeler was – in supplying boilers to the U.S. Navy for the U.S.S. Charles Roan - a 'government contractor' as that term is defined in Boyle v. Technologies Corporation, 487 U.S. 500 (1988).  This defense protects government contractors from liability for equipment supplied to the United States when (1) the United States approved reasonably precise specifications, (2) the equipment conformed with these specifications, and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the

---

2

Both cases were argued before the Washington State Supreme Court on March 8, 2008.   To date there has been no decision from that court.

8

supplier but not to the United States. <u>Boyle v. Technologies Corporation</u>, 487 U.S. 500 (1988).

[Defendant's Counsel's Affirmation at ¶ 11]. With respect to its duty to warn, counsel for the moving defendant argues:

> The United States Court of Appeals for Second Circuit in <u>Grispo v. Eagle-Picher Industries, Inc.</u>, 897 F.2d 626 (2d Cir. 1990) held that in order for a government contractor to prevail upon the defense to preempt state tort law on failure to warn claims:
>
>> The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, see <u>Boyle</u>, 108 S.Ct. at 2518 ("feature in question [must be] considered by a Government officer, and not merely by the contractor itself"), and thus the Government itself "dictated" the content of the warnings meant to accompany the product. [citation omitted] Put differently, under <u>Boyle</u>, for the military contractor defense to apply, government officials ultimately must remain the agents of decision.
>
> <u>Grispo</u>, at 630; <u>see also</u>, <u>Kerstetter v. Pacific Scientific Co.</u>, 210 F.3d 431, 438 (5th Cir.), <u>cert. denied</u> 531 U.S. 919 (2000) (government contractor defense applicable where "there is evidence that the government was involved in the decision to give, or not to give, a warning."). Even this standard, were it to be argued that the Court of Appeals for the Second Circuit can modify the <u>Boyle</u> standard, was met at trial by Foster Wheeler.

[Defendant's Counsel's Affirmation at ¶ 16].

However, <u>the full paragraph</u> of the Second Circuit's opinion in <u>Grispo</u>, on which the defendant relies, with text omitted by counsel for the defendant, <u>without the use of ellipses</u>, provides:

> **Having found that, in appropriate circumstances, <u>Boyle</u> may require displacement of such a duty, we next consider under what circumstances <u>Boyle</u> requires displacement of a state law duty to warn. We agree with the district court that for Eagle-Picher to establish that <u>Boyle</u> displaces any state law duty to warn, Eagle-Picher must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us that <u>Boyle</u>'s requirement of government approval of 'reasonably precise specifications' mandates that the federal duties be *imposed* upon the contractor. The contractor must show that**

9

whatever warnings accompanied a product resulted from a determination of a government official, see Boyle, 108 S.Ct. at 2518 ('feature in question [must be] considered by a Government officer, and not merely by the contractor itself'), and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product. See Nicholson, 697 F.Supp. at 604. Put differently, under Boyle, for the military contractor defense to apply, government officials ultimately must remain the agents of decision.[footnote omitted].

In re Joint Eastern and Southern Dist. New York Asbestos Litigation [Grispo], 897 F.2d 626, 630 [emphasis added]. More recently, in Sether v. Agco Corporation, et al, supra, the United States District Court for the Southern District of Illinois held:

> In the context of a claim of failure to warn, in order to satisfy the first element of the military contractor defense a defendant must show that the government itself dictated or otherwise controlled the content of the warnings meant to accompany the product. See Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 401 (5th Cir.1998) (holding that contractors hired to produce the carcinogenic defoliant Agent Orange for use by the military during the Vietnam War established the first element of the Boyle standard by showing that they failed to put warnings on the product only because they 'were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract.'); Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th Cir.1996) (quoting Boyle, 487 U.S. at 512) ("[T]he government contractor's defense ... is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning, [the defendant] was ... acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States.'); In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d 626, 630 (2d Cir.1990) ( 'Boyle 's requirement of government approval of 'reasonably precise specifications' mandates that the federal duties be *imposed* upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, ... and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product.") (emphasis in original).

Id.

In addition, in the context of asbestos litigation in New York, the Appellate Division, First Department held:

> In the absence of any evidence of a conflict between State warning requirements and any Federal prescription of label information or proscription of a warning, there was no basis for Worthington's requested government contractor defense charge ( *see,* In re "Agent Orange" Product Liability Litigation 996 F.2d 1425, 1436, cert. denied sub nom. Hartman v. Diamond Shamrock Chemicals Co., 510 U.S. 1140, 114 S.Ct. 1125,

127 L.Ed.2d 434; <u>Russek v. Unisys Corp.</u>, 921 F.Supp. 1277, 1292). Nor did this defendant carry its heavy burden of showing that the Navy's failure to warn Mr. Ronsini was so extraordinary and unforeseeable that it broke the chain of proximate causation ( <u>see, Pagowski v. Martinez</u>, 197 A.D.2d 400, 602 N.Y.S.2d 376).

<u>In re New York City Asbestos Litigation</u>, 256 A.D.2d 250, 251 (1 st Dept. 1998), <u>lv.to app.denied</u>, 93 N.Y.2d 818, <u>cert.denied, sub nom.</u>, <u>Worthington Corp v. Ronsini</u>, 529 U.S. 1019.

In the instant action, the court finds that the record before it is utterly bereft of any evidence that Foster Wheeler was, by Federal specification, prohibited from placing a warning on its boilers or in the manuals accompanying the product.  Thus, in the absence of any evidence of a conflict between State warning requirements and any Federal prescription of label information or proscription of a warning, there was no basis for Foster-Wheeler's requested government contractor defense charge, and accordingly, denies defendant's motion to set aside the verdict based on the "government contractor defense."

> [C]    <u>Sufficiency of the Evidence</u>:

> > [1]    <u>Standard of Review</u>:

It is axiomatic that:

> To set aside the verdict... [on the ground that plaintiff failed to present a prima facie case] '[i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the evidence presented at trial ( <u>Cohen v. Hallmark Cards</u>, 45 N.Y.2d 493,; *see Sager Spuck* <u>Statewide Supply Co. v. Meyer</u>, 298 A.D.2d 794, 796-797; <u>Vasquez v. Figueroa</u>, 262 A.D.2d 179, 180).

<u>Stewart v. Olean Medical Group, P.C.</u>, 17 A.D.3d 1094, 1095 (4th Dept.,2005), <u>reargument denied</u>, 19 A.D.3d 1185; <u>see also</u>, <u>Nolan v. Union College Trust of Schenectady</u>, 51 A.D.3d 1253 (3rd Dept. 2008).  Further: "In deciding whether the jury's verdict in favor of the plaintiff was or was not supported by sufficient evidence as a matter of law, the evidence must be viewed in the light most favorable to the plaintiff, who must be accorded the benefit of every favorable inference which can reasonably be drawn ( <u>see O'Boyle v. Avis Rent-A-Car Sys.</u>, 78 A.D.2d 431)." <u>Lazier v. Strickland Avenue Corp.</u> 50 A.D.3d 641, 642 (2nd Dept.,2008); <u>Evers v. Carroll</u>, 17 A.D.3d 629 (2nd Dept. 2005) ["'In reviewing the record to ascertain whether the verdict was a fair reflection of the evidence, great deference is accorded to the fact-finding function of the jury, as it is in the foremost

11

position to assess witness credibility' [citations omitted]."].   Lastly: "The court must not "unnecessarily interfere with the fact-finding function of the jury to a degree that amounts   to an usurpation of the jury's duty" (Nicastro v Park, 113 AD2d 129, 133, quoting Ellis v Hoelzel, 57 AD2d 968, 969 [1977])." Ruddock v. Happell 307 A.D.2d 719, 720 -721 ( 4th Dept. 2003).

[2]   Proximate Cause:

Foster Wheeler first moves to set aside the verdict on the grounds that the plaintiff failed to prove a prima facie case, arguing, in sum and substance that the plaintiff failed to prove, as a matter of law,  that any act or omission by the defendant was a proximate cause of the plaintiff's mesothelioma.  In support of its motion, counsel for the Foster Wheeler argues:

21.   Based on the evidence introduced during trial Plaintiff also failed, as a matter or law, to meet his burden to prove by a preponderance of evidence that any acts or omissions on the part of Foster Wheeler were a proximate cause of Mr. Pokorney's injuries.

22.   It was Plaintiff's burden to prove that if Foster Wheeler had issued a warning regarding asbestos hazards related to boilers, it would have had an impact on Plaintiff's conduct or prevented his disease.  As the uncontroverted evidence proved at trial, no warning by Foster Wheeler would have had any impact whatsoever.  It was not enough for Plaintiff to allege that Foster Wheeler should have placed a warning on their boilers.  Plaintiff had to prove that the failure to place a warning on the boilers was a proximate cause of Plaintiff's injury.  There simply was no evidence put forth at trial to support such a claim.  (See Betts testimony, Exhibit F at Pg. 1538, Ln. 25 to Pg. 1540, Ln. 18)

23.   Plaintiff failed to put forth any evidence that a warning issued by Foster Wheeler would have changed the fact that the Navy would have continued to use asbestos-containing materials on their ships.  There was no evidence put forth that any warning by Foster Wheeler would have changed the orders given by the Navy to sailors such as Mr. Pokorney.  Lastly, and most importantly, there was no evidence put forth that any warning issued by Foster Wheeler would have resulted in any change in Mr. Pokorney's actions. In the end, warning or no warning, Mr. Pokorney was going to follow the orders given to him by his commanding officers

[Defendant's Counsel's Affirmation at ¶¶ 21-23].

In opposition, counsel for the plaintiff argue:

Foster Wheeler did not issue any warnings (much less adequate warnings) about the hazards of asbestos, either through any written material or any signs on the boiler itself.

Mr. Pokorney testified that, if he would have seen a warning about asbestos in written materials or on the boiler itself, he would have followed the warning by taking safety precautions. (See Exhibit 13, Excerpts from Trial Transcript, June 25, 2008, at 159-161; Ex. 8, at 292). Mr. Pokorney was a top student in his boiler school and he read everything that was given to him. (Ex. 13, at 104-105; Ex. 8, at 290-91). He followed instructions and performed in an exemplary fashion as a boilermen. (Ex. 13, at 108-09; see Exhibit 14, Plaintiff's Trial Exhibit 5, Letter of Recommendation dated February 7, 1966).

Mr. Pokorney testified that he did not know about the hazards of asbestos while serving aboard the USS Roan and, to his knowledge, nobody on the USS Roan knew about the hazards of asbestos. (Ex. 8, 289, 291-292). He further testified that he and his shipmates 'were family' and that they looked out for each other's safety. (Ex. 13, at 159-160).

[Plaintiff's Counsels' Memorandum of Law at pp. 10].

In the instant action, the court finds that there is conflicting evidence with respect to the issue of causation. Specifically, counsel for Foster Wheeler correctly points out that the plaintiff testified:

Q.   Well, just the sign, itself. Asbestos could be hazardous. Indeed, if you're worried about that in a boiler room, as a 19 year old, the first thing you are going to do is ask the chief, what is this; fair?

A.   Fair.

Q.   Obviously, chief, you know, you had this thing for 20 years, there is asbestos throughout this ship?

A.   He's got more stripes on his arm than I do.

Q.   Correct. And, so, you ask him, and if he says, seaman, there is not a problem, you go do your job, then, indeed, you do your job; fair?

A.   Yeah, fair.

(Testimony of Mr. Pokorney attached hereto as Exhibits A and B at Pg. 275).

[Defendant's Counsel Affirmation at ¶ 23]. However, as counsel for the plaintiff correctly cite, Mr. Pokorney testified that:

Q.   If you saw a warning in a boiler manual or on the boiler itself, that said asbestos is dangerous and that you have to wet down the asbestos to reduce your exposure, what if anything would you have done?

A.   I would have followed the manual as to what the instructions said to do.

Q.   If you saw a warning in a boiler manual or on the boiler itself, that said asbestos is dangerous and that you have to have to wear a mask or a respirator when dust is created, what, if anything would you have

done?

A.   I would have asked for one, and used it.

Q.   If you saw a warning in the boiler manual or on the boiler itself, that said asbestos is dangerous and you have to do your best to avoid creating dust from the asbestos, what, if anything would you have done?

A.   I would have been a lot more careful.

[Trial Transcript at p. 159]. Thus the court finds that, on the issue of causation, the testimony of Mr. Pokorney created at most an issue of fact, from which the jury could reasonably infer that the lack of warnings provided by the moving defendant was a substantial factor in causing the plaintiff's mesothelioma, and accordingly denies defendant's motion to set aside the verdict on this ground.

[3]   State of the Art:

Counsel for the defendant next argues that the jury's verdict was against the weight of the evidence insofar as:

25.   Plaintiff also failed to establish a prima facie case that Foster Wheeler was unreasonable for not warning about the hazards associated with the use of asbestos to insulate boilers, because he has failed to show that Mr. Pokorney would ever have worked in an environment which would have been considered unsafe by **any** expert in the field during the relevant historical time period.  At trial Plaintiff called Dr. David Ozonoff to testify as to the available "knowledge" of the hazards of asbestos between 1899 and 1965. Dr. Ozonoff's mere recitation of the world's general knowledge regarding the dangers of asbestos exposure did not provide the jury with an explanation of the applicable medical and scientific standard of care required at or about the time that Foster Wheeler delivered its boilers to the Navy, or the time of Plaintiff's exposure, nor did it provide any evidence whatsoever that Mr. Pokorney would ever have been exposed to asbestos at a level above what was considered safe during the relevant time period.

26.   The uncontroverted evidence presented at trial established that the state of the art regarding asbestos hazards in the 1940s (when the U.S.S. Roan was constructed) and even the 1960s (when Mr. Pokorney served in the U. S. Navy) was that asbestos could be safely used and handled throughout a working lifetime so long as exposures were kept below 5 million particles per cubic foot ("5 mppcf") of asbestos dust on a time weighted average.

[Defendant's Counsel's Affirmation at ¶¶ 25-26].

In opposition, counsel for the plaintiff argue:

In this case, there was more than sufficient evidence upon which the jury could reasonably and legitimately infer that Foster Wheeler was negligent in not

14

issuing any warning about asbestos from the time its boilers were installed on the USS Roan and up through the 1962 through 1965 time period in which Mr. Pokorney was exposed to asbestos from repairing and maintaining those boilers [footnote omitted].

Based upon the evidence set forth above, see, supra, FACTS § III, there was more than sufficient evidence that Foster Wheeler was negligent in failing to issue any warnings about the hazards of asbestos. The existence of the TLV raised a factual issue that was resolved against Foster Wheeler. The TLV was not considered a "safe level" of exposure to asbestos and there is no evidence that Foster Wheeler ever relied upon it as a basis for not warning about asbestos. See, supra, FACTS § IV Not surprisingly, Foster Wheeler does not (and cannot) cite a single case in the history of asbestos litigation in which a court granted judgment as a matter of law on the issue of negligence based on the existence of the TLV.

Foster Wheeler knew or should have known that breathing in asbestos was harmful to health; it knew or should have known that asbestos materials would be used on its boilers and that boilermen would be exposed to asbestos from the use of the boilers; and it did nothing.

The jury properly resolved the fact-intensive issue of negligence against Foster Wheeler.

[Plaintiff's Counsels' Memorandum of Law at pp. 19-20].

At the end of this court's charge on negligence, the jury was instructed as follows:

If you find that it was reasonably foreseeable to the defendant, given the state of the art, during the applicable periods, that a plaintiff was at risk for contracting some asbestos disease through the use of the defendant's product and that plaintiff did not already have knowledge of the specific risks, then the defendant has a duty to warn, and the failure to warn constitutes a breach of the duty to warn. If you find that it was not reasonably foreseeable to the defendant given the state of the art, during the applicable periods, that a plaintiff was at risk of contracting some asbestos disease from the use of the defendant's product or that the plaintiff already had knowledge of the specific risks, then the defendant has no duty to warn, and your verdict will be for the defendant.

As more fully set forth in plaintiff's Memorandum of Law in opposition to the instant motion, there was more than ample evidence to infer that Foster Wheeler was aware of the dangers associated with exposure to asbestos, and despite this knowledge, it failed to warn end users of its product of these dangers. [See Plaintiff's Counsel's Memorandum of Law at pp.7-8]. Thus, in light of the foregoing, the court does find that jury's finding with respect to "state of the art" was based on a valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the evidence presented at trial , and accordingly denies

defendant's motion.

[D]    Article 16:

Lastly, Foster Wheeler argues that this court erred, in ruling that, as a matter of law, that liability could not be apportioned to the United States Navy pursuant to New York Civil Procedure Law and Rules article 16.    As this court previously ruled on defendant's motion New York Civil Practice Law and Rules § 1601[1] provides, in pertinent part:

> ... the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein  <u>if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action</u>...

[N.Y.Civ.Prac. L.&R. § 1601[1] (McKinney 1997)[emphasis added]].  The issue before this court is, as framed by the statute, whether plaintiff, through the exercise of due diligence was unable to obtain jurisdiction over the United States Navy.  In <u>Duffy v. Chautauqua County</u>, <u>op.cit</u>, the Appellate Division, Fourth Department held:

> In <u>Rezucha v Garlock Mech. Packing Co</u> [159 Misc.2d 855] (<u>supra</u>, at 860), Supreme Court permitted defendants to prove the State's share of culpability pursuant to CPLR 1601 in spite of the fact that the State was immune from suit in Supreme Court. The court held that 'the State's immunity from suit is better viewed as a limitation on the subject matter jurisdiction of the Supreme Court rather than as a restriction on plaintiff's ability to make service and obtain personal jurisdiction under CPLR 301' (<u>Rezucha v Garlock Mech. Packing Co.</u>, <u>supra</u>, at 860). In McKinney's Supplementary Practice Commentaries, Vincent Alexander comments that the <u>Rezucha</u> court reached the proper result, adding that further support for the result is 'that a plaintiff's inability to sue the State in Supreme Court is not a jurisdictional limitation at all, but rather is the result of a rule of substantive law based on the doctrine of sovereign immunity' (Alexander, 1994 Supp Practice Commentary, op. cit., at 223; see also, <u>People ex rel. Swift v Luce</u>, <u>supra</u>, at 487 ['The Supreme Court had not jurisdiction solely because of the immunity of the [State] from suit, not because it did not have jurisdiction of such a cause of action']). And in his article, The New Law Partially Abolishing the Joint Liability Rule in Tort Cases--Part I (322 NY St L Dig 1, 3 [Oct. 1986]), Professor David Siegel suggests that the feature that precludes consideration of a nonparty's culpability under CPLR 1601 is the lack of personal, rather than subject matter, jurisdiction....
>
> The term 'jurisdiction' in CPLR 1601 (1), therefore, refers to personal rather than to subject matter jurisdiction.

<u>Id</u>. at 266-267. Citing to the Fourth Department's decision, counsel for Foster Wheeler, Inc argues, in sum and substance that insofar as the inability to obtain jurisdiction over the United States Navy is based on sovereign immunity, it is a matter of subject matter rather than personal jurisdiction, and

accordingly outside of the confines of New York Civil Practice Law and Rules § 1601[1]. While initially persuasive, it is not necessarily a panacea on which the defendant can rely to bring the United States Navy within the jurisdictional confines of article 16.

It is axiomatic that the United States Military is immune from suit under the Federal Tort Claims Act [28 USCA §§ 2671-2680] as interpreted by the United State Supreme Court in Feres v. United States, op.cit. In Wake v. United States, 89 F.3d 53 (2ⁿᵈ Cir. 1996) the Second Circuit Court of Appeals held:

> In Feres, the Supreme Court held that the United States is not liable for injuries to members of the military under the FTCA if their 'injuries arise out of or are in the course of activity incident to service.' 340 U.S. at 146, 71 S.Ct. at 159. Three rationales underlie the *Feres* doctrine: (1) the 'distinctly federal' relationship between the Government and members of its armed forces; (2) the existence of a uniform system of 'generous statutory disability and death benefits' for members of the military; and (3) the need to preserve the military disciplinary structure and prevent judicial involvement in sensitive military matters. See United States v. Johnson, 481 U.S. 681, 688-691, 107 S.Ct. 2063, 2067-69, 95 L.Ed.2d 648 (1987); see also United States v. Stanley, 483 U.S. 669, 682-683, 107 S.Ct. 3054, 3063-64, 97 L.Ed.2d 550 (1987). As we have recently observed, the three broad considerations underlying the *Feres* doctrine permeate the process of assessing whether the totality of the germane facts giving rise to a service member's claim occurred within the purview of a distinctly military sphere of activity or while a military relationship was in effect. See Taber v. Maine, 67 F.3d 1029, 1049; Sanchez III, 878 F.2d at 637; Bozeman v. United States, 780 F.2d 198, 200-01 (2d Cir.1985).

Id. at 57-58. The court then goes on to hold:

> Claims for indemnification against the United States in the circumstances of this case are barred by the Feres doctrine to the same extent as Wake's claims are barred. See Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058-59, 52 L.Ed.2d 665 (1977) (where National Guard officer injured in an airplane accident sued both United States and manufacturer of plane, and manufacturer asserted cross-claim against the United States for indemnity, Court held that 'third-party indemnity action in this case is unavailable for essentially the same reasons that the direct action by [the injured plaintiff] is barred by Feres'); see also In re "Agent Orange" Product Liability Litigation, 818 F.2d 204, 206-10 (2d Cir.1987) (refusing appellants' invitation to 'reject the Stencel holding and the Feres doctrine upon which it was based').

> Similarly, claims for indemnification against individual government officials are barred by the Feres doctrine to the same extent as Wake's claims are barred. See Agent Orange, 818 F.2d at 209 ('[w]e find no merit in appellants' contention that the protection against liability provided by Feres and Stencel applies only to the Government and not to its officials').

In sum, because Wake's claims against the United States and the individual defendants were barred by <u>Feres</u>, any cross-claim by Norwich University is similarly barred, and any amendment of Norwich University's answer would be futile. <u>See Mackensworth v. S.S. American Merchant</u>, 28 F.3d 246, 251 (2d Cir.1994) (leave to amend may not be given where futile).

<u>Id</u>. While <u>Feres</u> recognizes certain exceptions to the doctrine of sovereign immunity, none are set forth in or supported by the record before this court.

Following the Appellate Division, Fourth Department's decision in <u>Duffy v. Chautauqua County</u>, <u>op.cit</u>, Justice Helen Freedman in <u>In re New York City Asbestos Litigation [Tancredi]</u>, 194 Misc.2d 214 (S.Ct. N.Y.Co. 2002), <u>aff'd</u>, 6 A.D.3d 252, <u>lv.to.app.dismissed</u>, 5 N.Y.3d 849 recognized the ability to include the proportionate share of culpability of bankrupt defendants under New York Civil Practice Law and Rules § 1601[1]. In so holding, Justice Freedman found:

> <u>Personal jurisdiction is unaffected by a party's bankruptcy filing and the attendant automatic stay: a bankruptcy stay merely suspends other court proceedings outside the bankruptcy proceeding, and does not divest those courts of jurisdiction over the bankrupt</u>. See <u>Kleinsleep Prods. v. McCrory Corp.</u>, 271 A.D.2d 411, 412, (2nd Dept.2000) (automatic stay 'did not deprive the court of jurisdiction over the action commenced but merely suspended the proceedings'); <u>Intl. Fidelity Ins. v. European Am. Bank</u>, 129 A.D.2d 679, 679-80 (2nd Dept.1987) (same).
>
> Accordingly, it is declared that 'jurisdiction' in CPLR 1601(1) means 'personal jurisdiction,' and that the culpability of a bankrupt, non-party tortfeasor will be included when calculating the defendant-tortfeasors' exposure under CPLR 1601(1), unless the plaintiff proves that he or she with due diligence could not obtain personal jurisdiction over the bankrupt or its estate, [footnote omitted] or unless an exemption set forth in CPLR 1602 applies. [footnote omitted].

Id. at 225-226 [emphasis added].

As more fully set forth above, in sharp contrast to the stay provisions of the United States Bankruptcy Code, which as Justice Freedman and the cited Second Department cases held merely suspends other court proceedings outside of the bankruptcy court, under <u>Feres, there is an absolute bar to the commencement of an action against the United States</u> for injuries to members of the military under the Federal Tort Claims Act if their injuries arise out of or are in the course of activity incident to service, subject to certain exceptions not present on the record before this court. [3] As

---

[3]

Nor is the court persuaded that this case falls under the "discretionary function" exception to sovereign immunity [See, e.g., <u>In re Joint Eastern and Southern Districts Asbestos Litigation v. United States</u>, 897 F.2d 626 (2nd Cir. 1990); <u>In re Joint Eastern and Southern Districts Asbestos Litigation v. United States</u>, 891 F.2d 31 (2nd Cir. 1989).

recognized by the Second Circuit Court of Appeals in <u>Wake v. United States</u>, <u>supra</u>, this ban applies not only to first party actions, but also to third party actions commenced against the United States Military by defendants.

In the instant action, the court finds that defense counsel's argument that personal jurisdiction could be obtained over the United States Navy at one of its recruiting stations located in the State of New York inconsistent with the analysis of personal jurisdiction under article 16 enunciated by Justice Freedman in <u>Tancredi</u>. Here, unlike the limitation on the New York Supreme Court's subject matter jurisdiction over the State of New York[4] recognized in <u>Duffy v. Chautauqua County</u>, op.cit, and <u>Rezucha v Garlock Mech. Packing Co</u>, op.cit, under the circumstances of this case, the Federal Tort Claims Act and the <u>Feres</u> Doctrine divests this court, and any other state court of the United States of personal jurisdiction over the United States Navy. Thus, in light of the foregoing, this court finds that neither plaintiff nor <u>Foster Wheeler. Inc</u>, through the exercise of due diligence was able to obtain jurisdiction over the United States Navy.

Even if the court were to find that New York Civil Practice Law and Rules § 1601[1] did not act as a bar to the apportionment of liability to the United States Navy, the court would nonetheless find that such apportionment is barred by New York Civil Practice Law and Rules § 1602[4]. New York Civil Practice Law and Rules § 1602[4] provides:

> The limitations in this article shall: ... not apply to claims under the workers' compensation law or to a claim against a defendant where claimant has sustained a 'grave injury as defined in section eleven of the workers' compensation law to the extent of the equitable share of any person against whom the claimant is barred from asserting a cause of action because of the applicability of the workers' compensation law ...

[N.Y.Civ.Prac. L.&R. § 1602[4] (McKinney 1997)].  In turn, New York Worker's Compensation Law § 11 provides, in pertinent part:

> **An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a "grave injury" which shall mean only one or more of the following: death...**

[N.Y. Work.Comp. Law §11 (McKinney 2006) [emphasis added]]. In the instant action there is no

---

[4]

[<u>See</u>, article II, N.Y. Court of Claims Act (McKinney 1989)].

allegation by defendant that the plaintiff has suffered a "grave injury" as defined by the worker's compensation law,[5] rather counsel for the defendant argues that New York Civil Practice Law and Rules § 1602[4] is inapplicable insofar as the United States Navy is not an employer as defined by New York Worker's Compensation Law § 2.  While the United States Military is not defined as an employer under the statute, this is not, as counsel would perhaps urge the end of the court's analysis.

In Makarova v. United States, 201 F.3d 110 (2nd Cir. 2000), the Second Circuit Court of Appeals held:

> The FTCA waives the government's sovereign immunity only for:
>
> 1.    injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
>
> 28 U.S.C. § 1346(b). Both parties concede that the FTCA governs Makarova's complaint, and that, accordingly, subject matter jurisdiction exists only if a private defendant could have been sued by Makarova in Washington, D.C.-'the place where the act or omission occurred." Id.
>
> Under the FTCA, courts are bound to apply the law of the state (or here, the district) where the accident occurred. See Richards v. United States, 369 U.S. 1, 10-15, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Under District of Columbia law, the exclusive remedy for an 'employee' seeking damages from her employer for a work-related injury is the District Workers' Compensation Act. See D.C.Code Ann. §§ 36-303(a)(1), 36-304 (1981); see also Rivers & Bryan, Inc. v. HBE Corp., 628 A.2d 631, 633 n. 4 (D.C.1993); Dominion Caisson Corp. v. Clark, 614 A.2d 529, 532-33 (D.C.1992). If Makarova was an 'employee' of the Kennedy Center, then her remedy lay with the District of Columbia Workers' Compensation Act and not the FTCA.

Id. at 113 -114.

In light of the foregoing, the court finds that the failure to include the United States Government or Military is not fatal to the verdict in favor of the plaintiff.  As the Second Circuit recognized in Makarova v. United States, supra, courts are bound to apply the law of the state in

---

[5]

While the plaintiff's diagnosis of mesothelioma is not contested in the instant action, a diagnosis of a terminal illness does not qualify as a "grave injury" under New York Worker's Compensation Law § 11 [see, Lopez v. Gem Granvure Co., 1 Misc.3d 913 (A), 2004 WL 300112 (S.Ct. Kings Co. 2004)].

which the accident occurred. Here, the defendant has not offered any argument that injury for which the defendant now seeks compensation is governed by a provision of Federal Law that would preempt the application of article 16 or the worker's compensation law of the State of New York. Thus the court finds that New York Civil Practice Law and Rules § 1602[4] applicable, and denies defendant's motion to set aside the verdict based this court's failure to include the United States Navy on the verdict sheet.

The foregoing constitutes the Decision and Order of this Court

**ENTER,**

_____

Hon. James W. McCarthy, AJSC

Dated:  December 4, 2008
at Oswego, New York.