Page 1

1      SUPREME COURT OF THE STATE OF NEW YORK
2              COUNTY OF NEW YORK
3      - - - - - - - - - - - - - - - - - - -x
4      IN RE: NEW YORK CITY ASBESTOS LITIGATION
5      - - - - - - - - - - - - - - - - - - -x
6      APRIL 2012 IN-EXTREMIS LUNG CANCER GROUP,:
7             Plaintiffs,                      :
8      v.                                      :
9      CRANE CO, ET AL.,                       :
10            Defendants.                      :
11     - - - - - - - - - - - - - - - - - - -x
12            Deposition of SAMUEL FORMAN, M.D.
13                   Washington, D.C.
14                Monday, September 17, 2012
15                     10:00 a.m.
16
17         Deposition of SAMUEL FORMAN, M.D., held at the
18     offices of K&L Gates, LLP, 1601 K Street, NW,
19     Washington, D.C, pursuant to agreement, before
20     Cassandra E. Ellis, Registered Professional Reporter
21     and Notary Public of The District of Columbia.
22
23         Job No.: 417769
24         Pages 1 through 313
25         Reported by: Cassandra E. Ellis, RPR

Page 57

1        SAMUEL FORMAN, M.D.
2            Now, as a hypothetical, if
3    the Navy encountered a -- some kind of
4    a warning or a communication that it,
5    itself, did not agree with, then I --
6    then I can't imagine, again, this is
7    all hypothetical, the Navy accepting,
8    acquiescing, approving, you know,
9    depending on the circumstances, of any
10   kind of warning or hazard
11   communication for a hazard that it --
12   it -- it, itself, did not agree
13   existed.
14       Q    I -- I think I'm beginning
15   to understand what you're saying.  Let
16   me see if I can repeat it and see if
17   it's -- my understanding is getting
18   closer.
19            I think I hear you saying
20   that if a warning on an asbestos
21   product or on a container, any sort of
22   warning about the hazards of asbestos
23   was consistent with the Navy's
24   understanding of the hazard and how it
25   wished to control the hazard, then it

Page 58

1          SAMUEL FORMAN, M.D.
2    would allow the warning; is that
3    correct?
4          A     Yes.  And -- and I saw the
5    situation you cited of warnings on
6    containers for thermal insulation
7    starting to appear in the mid 60s as
8    the converse of that, you know, a -- a
9    -- a communication about as- -- an
10   asbestos-related hazard on a container
11   of thermal insulation that would be
12   consistent with the Navy's judgment of
13   the hazard and -- and consistent with
14   how it would control the hazard, and
15   acquiesce, not require it --
16          Q    Right.
17          A    -- but just be --
18          Q    Allowed it?
19          A    -- accepting, allow it,
20   but -- but I see that as the converse
21   of a recommendation for some kind of
22   warning or communication for a
23   material or circumstance of use that
24   it, itself, did not accept as being
25   hazardous in the workplaces.  So -- so

Page 59

1  SAMUEL FORMAN, M.D.
2  there's -- there's one assertion.
3  There's the converse of it, one of
4  them, one example, I guess, is an
5  actual example of a label on the
6  outside of a thermal insulation box,
7  you know, and how -- how would the
8  Navy react to that, the others are
9  hypothetical, that is, how about a
10 recommendation for a warning or a
11 hazard communication for a material
12 and circumstances of use that the Navy
13 did not accept as being valid in its
14 workplaces.
15      Q    But you cannot cite to an
16 example where, in fact, a company
17 proposed a warning for asbestos that
18 you believed was inconsistent with the
19 Navy's understanding of the hazard or
20 how to control it, and the Navy's
21 actions precluded the fact, you don't
22 know of any actual instance of that
23 happening?
24      A    I -- I don't, and that's
25 why I identified the situations as

Page 60

1        SAMUEL FORMAN, M.D.
2    hypothetical.
3        Q    Are you familiar with the
4    military standard that related to
5    markings on containers and packaging
6    that existed from the 1950s, `60s,
7    `70s, and `40s, as well?
8        A    I have a general
9    understanding of -- of those sort of
10   things.  Again, I don't hold myself
11   out as an expert in the fine points of
12   military procurement.
13       Q    Are you aware, or is your
14   knowledge of those military standards
15   such that the military standards
16   themselves to a marking of the
17   packages allowed deviations from what
18   the Navy was requiring, if you had
19   Navy approval?
20            MR. GREEN:  Objection
21       to the form.  Excuse me,
22       objection to the form of
23       the question, vague and
24       ambiguous.
25            MR. INSCO:  Lacks