CAUSE NO. 25489

VERNON BRAATEN, ) IN THE DISTRICT COURT
Plaintiff, )
)
VS. )
) BRAZORIA COUNTY, TEXAS
CERTAINTEED CORPORATION, )
et al., )
Defendants. ) 149th JUDICIAL DISTRICT
)

********************************************

ORAL DEPOSITION OF
ADMIRAL DAVID P. SARGENT, JR.
May 25, 2004
ORIGINAL

********************************************

ORAL DEPOSITION OF ADMIRAL DAVID P. SARGENT, JR., produced as an expert witness at the instance of Defendant Crane Co., and duly sworn, was taken in the above-styled and numbered cause on the 25th of May, 2004, from 1:15 p.m. to 4:13 p.m., before JANA MULHOLLAN, Registered Professional Reporter and Notary Public in and for the District of Columbia, reported by machine shorthand, at the offices of Kirkpatrick & Lockhart, 1800 Massachusetts Avenue, N.W., Washington, D.C., pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.



EXCERPT

EXHIBIT 60

APPEARANCES

FOR THE PLAINTIFF:
MS. KYLA REED
(Via Telephone Communications)
WATERS & KRAUS
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
Phone: 214-357-6244

FOR THE DEFENDANT, Crane Co.:
MR. CHRIS MICHAEL TEMPLE
KIRKPATRICK & LOCKHART
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Phone: 412-355-6343
E-Mail: ctemple@kl.com
- AND -
MR. MICHAEL J. RAMIREZ
(Via Telephone Communications)
GODWIN GRUBER, LLP
1201 Elm Street, Suite 1700
Dallas, Texas 75270
Phone: 214-939-8603

FOR THE DEFENDANT, Kaiser Gypsum:
MR. JASON W. FATHEREE
(Via Telephone Communications)
DeHAY & ELLISTON
901 Main Street, Suite 3500
Dallas, Texas 75202
Phone: 214-210-2445

FOR THE DEFENDANT, Yarway Corporation:
MS. MEREDITH WOOD
(Via Telephone Communications)
WATSON ROSSICK
700 Lavaca, Suite 602
Austin, Texas 78701
Phone: 512-275-0480

FOR THE DEFENDANT, Garlock:
MS. LESLEY W. HEMPFLING
(Via Telephone Communications)
SEGAL McCAMBRIDGE SINGER & MAHONEY
100 Congress Avenue, Suite 700
Austin, Texas 78702
Phone: 512-476-7834



APPEARANCES (Continued)

FOR THE DEFENDANT, John Crane:
MR. MARK TIVIN
(Via Telephone Communications)
O'Connell & Associates
645 Tollgate Road, Suite 220
Elgin, Illinois 60123
Phone: 847-741-4603
E-Mail: mtivin@djoalaw.com

FOR THE DEFENDANT, General Motors Corporation:
MR. ROBERT K. MITCHELL
(Via Telephone Communications)
THOMPSON & KNIGHT
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201
Phone: 214-969-1309

FOR THE DEFENDANT, Gorman Rupp:
MR. JOHN DURKAY
(Via Telephone Communications)
MEHAFFY WEBER
2615 Calder Avenue, Suite 800
Beaumont, Texas 77704
Phone: 409-835-5011
E-Mail: johndurkay@mehaffyweber.com

FOR THE DEFENDANT, Guard-Line:
MR. NATHANIEL A. BOSIO
(Via Telephone Communication)
DOGAN & WILKINSON
734 Delmas Avenue
Pascagoula, Mississippi 39568
Phone: 228-762-2272
E-Mail: nbosio@doganwilkinson.com

FOR THE DEFENDANT, Goulds Pumps:
MR. BRADLEY T. SHARPE
(Via Telephone Communications)
NAMAN, HOWELL, SMITH & LEE
111 University Drive East, Suite 210
College Station, Texas 77840
Phone: 979-846-0300
E-Mail: fuller@namanhowell.com



APPEARANCES (Continued)

FOR THE DEFENDANTS, Georgia-Pacific and Union Carbide:
MS. CHRISTINE M. RODRIGUEZ
(Via Telephone Communications)
GILBERT & GILBERT
222 North Velasco Street
Angleton, Texas 77516
Phone: 979-849-5741

FOR THE DEFENDANT, CertainTeed Corporation:
MS. PAULA H. BLAZEK
(Via Telephone Communications)
GERMER GERTZ, LLP
550 Fannin, Suite 500
Beaumont, Texas 77701
Phone: 409-654-6700

ALSO PRESENT:
MS. JANA MULHOLLAN
The Court Reporter



INDEX


| | PAGE |
|---|---|
| Appearances | 2-4 |
| Stipulations | 6 |
| WITNESS: ADMIRAL DAVID P. SARGENT, JR. | |
| By Ms. Reed | 8 |
| Reporter's Certificate | 112 |


EXHIBITS


| EXHIBIT | PAGE MARKED |
|---|---|
| 1 | 56 |
| 2 | 56 |

AGREEMENTS

AS PER RULE 11, the following agreements were agreed to by and between the parties hereto, through their respective attorneys appearing herein:

IT IS HEREBY agreed by and between the parties hereto, through their attorneys appearing herein, that any and all objections to any questions, except as to form, or answer, except as to responsiveness, contained herein may be made upon the offering of this deposition in evidence upon the trial of this cause with the same force and effect as though the witness were present in person and testifying from the witness stand.



MR. RAMIREZ: This is Michael Ramirez, Texas counsel for Crane Co. I propose three stipulations to govern the conduct of this deposition. The first stipulation is that an objection by a Defendant is good for all Defendants that are present and participating in the deposition.

Does anybody have an objection to that stipulation?

Okay. Ms. Plaintiff's Counsel, do you agree to that stipulation?

MS. REED: Yes, we'll agree to that stipulation.

MR. RAMIREZ: Okay. The second stipulation is that the deposition of Admiral Sargent will be conducted under the Texas Civil Rules of procedure. Is that agreeable?

MS. REED: That is agreeable.

MR. RAMIREZ: And the third stipulation is that -- well, actually let me just say Admiral Sargent will not waive signature and would like to review the transcript prior to the court reporter certifying the transcript.

MS. REED: That is perfectly fine.

We aren't running up on a trial date in this case, are we?



MR. RAMIREZ: The trial date is July 6th.

MS. REED: Then that should be fine.

MR. RAMIREZ: Okay. And before we go any further, do you have anything that you would like to stipulate to other than liability and if any other Defendants have anything to put on the record?

Okay. Good.

Whereupon

ADMIRAL DAVID P. SARGENT, JR.,

having been first duly sworn, testified as follows:

EXAMINATION

BY MS. REED:

Q. Mr. Sargent, do you prefer to be addressed as admiral or mister?

A. Admiral would be fine.

Q. Okay. Admiral Sargent, my name is Kyla Reed. I'm an attorney with Waters & Kraus in Dallas, Texas. We represent Mr. Braaten in the lawsuit that he has filed in this matter.

Have you ever been deposed before, Admiral Sargent?

A. I have not.

Q. All right. Just to go over a few ground rules for you then, since we're all on telephone and



modern technology isn't as wonderful as we all think it is, at some point in my questioning I may ask a question and I cut out or you don't understand the whole thing or even you understood the whole thing but it didn't make any sense, please feel free to ask me to rephrase or repeat the question.

And can we get the agreement that if you answer a question that you fully understood the question and heard it at all? Can you agree to that, sir?

A. Would you repeat that.

Q. Sure. Can I get you to agree that I can assume that when you've answered a question that you've fully heard it and understood the question?

A. Yes.

Q. And that if you don't understand you'll ask me to repeat it?

A. That's correct.

Q. Okay. Also all of your answers need to be vocal. It's hard for the court reporter to take down a nod of the ahead.

So can you to agree to do that, sir?

A. Certainly.

Q. We've already gone over reading and signing the transcript. So I guess we don't need to go over

DEFENSE COUNSEL: Objection to form.

THE WITNESS: No, I'm not aware of any instance like that.

BY MS. REED:

Q. But in your experience with the types of -- would that have been something that somebody from the manufacturing industry could have done is could have approached somebody from the Navy and said, hey, it may be necessary for us to place warnings on this component?

DEFENSE COUNSEL: Objection to form.

THE WITNESS: That's a somewhat different question, I think.

Clearly if -- typically what the Navy would be asking -- they would have what we would refer to as a conceptual design, in other words, something that described what we wanted a component to do and would go and hire a quality experienced firm to do the detailed design of a component to accomplish that, to deliver that back to the Navy for review and either approval or modification or disapproval.

In that set of discussions with industry, many things would be discussed by the design engineers. But it's typically the Navy has



done the assessment of what it is they need, they have decided at a conceptual level the component or the system that they need to do it and they are hiring the expertise of a firm who specializes in designing that specific component or system or something.

Now, your question, I think, was in that process if there were comments from industry to the Navy would that be possible, and the answer would be yes.

BY MS. REED:

Q. So it would be possible for industry to provide feedback to the Navy saying, you know, well, you may need to do this or have you thought about this? That's a part of the design of the system?

DEFENSE COUNSEL: Objection to form.

THE WITNESS: I'm sorry. Yes.

BY MS. REED:

Q. Okay. Yes, there is a chance for feedback?

A. There's certainly a chance for discussion in the design loop, as we would call it.

Q. Okay. During your time on ships, have you ever seen any component of a ship that contained any sort of a warning about a potential hazard posed by the component?



DEFENSE COUNSEL: Objection to form.

THE WITNESS: Certainly.

BY MS. REED:

Q. And can you think of any specific warnings that you have seen?

A. Sure.

Q. What are some of those?

A. High temperature, don't touch. Rotating equipment, stay clear. High noise area, stay out or wear hearing protection. Things like that. They typically would be not on the component itself but would be installed, you know, in the vicinity on a warning sign or something that the Navy had decided was required.

Q. Can you think of any component-specific warnings that you may have seen during your time with the Navy?

A. You mean actually on a component?

Q. Yes.

A. I honestly don't recall any.

Q. When did you personally first become aware of the potential hazard of asbestos and asbestos-containing products to those individuals who worked with it?

A. I would say -- I don't remember exactly,



but it was in the mid to late '70s.

Q. And how did you become aware of that fact?

A. The Navy had determined by then that, in fact, asbestos did pose a potential hazard not just in an industrial environment but also on board ships where it was installed, and there was an aggressive program both to educate and to implement procedures to protect both sailors and anybody else on board from those hazards that had been identified.

Exactly when that was -- I can't tell you the exact year, but it was late '70s. It was between my command of the ATF and the next time I was in a shipyard.

Q. Okay. Can you describe for the jury some of the programs and procedures the Navy put into place to deal with those -- that risk?

A. Absolutely. They were at several levels.

On board a ship when you were operating -- and if I might just clarify a little bit -- you asked earlier if I was there when a ship wasn't deployed -- I want to make sure that you understand that the sailors on a ship live on the ship. That's not just their workplace. That's they're home. And so they're there all of the time. And a big part of your time on a ship is back in the home port doing