IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK/NEWPORT NEWS DIVISION

CHARLES WESLEY MANN, Administrator   :
of the Estate of Elizabeth Frances   :
Mann, Deceased,   :
                  **Plaintiff**   :
  :

**v.**   :       C.A. No. 83-477-N
  :

H. K. PORTER COMPANY, INC., et al.   :
           **Defendants**   :

IN RE:  ALL CASES               C.P. 77-1

COPY

*The Deposition of*
*KENNETH NELSON*
*Taken Pursuant to Notice*

*DATE*                         November 12, 1985

*TIME*                         9:00 a.m.

*LOCATION*                 Fort Magruder Inn
                        Williamsburg, Virginia

*APPEARANCES*            RICHARD S. GLASSER, Esquire
                        Glasser & Glasser
                        Norfolk, Virginia

                        ROBERT R. HATTEN, Esquire
                        Patten, Wornom & Watkins
                        Newport News, Virginia

                        Counsel for Plaintiffs

**AUDIO-VISUAL REPORTING SERVICES, INC.**
700 East Main Street, Suite 1602
Richmond, Virginia 23219
(804) 644-2877

7

1        KENNETH NELSON, recalled as a witness, having been

2   previously sworn, resumed the stand, was examined and

3   testified as follows:

4

5   EXAMINATION BY MR. GLASSER:

6        Q        In generic terms, there is a pile of documents

7   in front of you, Mr. Nelson, which I would estimate to be

8   maybe three inches high comprising as your counsel has just

9   related to me of approximately forty-six documents.   You

10  have had occasion during last night to look at each of these

11  documents?

12       A        I have.

13       Q        Is it your -- or are you able to identify

14  each of these documents?

15       A        I am.

16       Q        Are in fact each of these documents reports

17  that you have prepared during the time period of 1943 while

18  you were with the -- working on behalf of the Maritime

19  Commission and the United States Navy?

20       A        Yes.   Some of the reports are joint reports

21  of Mr. Clou.

22       Q        But as to each, you are able to authenticate

23  them and to identify them?

24       A        I am.

25       Q        It's my understanding that in all but one of

21

1    A        I do not recall that.

2             MR. HATTEN:    All right.    Let me mark that

3    exhibit we referred to as 80 --   Exhibit Number 80.

4    That is the 1944 safety survey that you indicated did

5    not relate to industrial hygiene.

6             (Marked by the court reporter as Nelson

7    Exhibit Number 80.)

8

9  BY MR. HATTEN:

10             Q        All right.   Now, Mr. Nelson, do you agree

11  that any risk of serious disease or death from asbestos should

12  be avoided if feasible and available means exist to eliminate

13  or reduce that risk?

14             MR. EDELL:   Did he agree with that at the

15             time he was employed?

16             MR. HATTEN:   Does he agree with it now?

17             MR. EDELL:   I am going to direct him not to

18             answer.

19             MR. COHEN:   I object.

20

21  BY MR. HATTEN:

22             Q        In the 1940's as part of your industrial

23  hygiene responsibilities did you agree that any risk of

24  serious disease or death from asbestos exposure should be

25  avoided if feasible and available means existed to eliminate

Case 1:14-cv-04511-VEC   Document 37-38   Filed 07/09/14   Page 4 of 6

22

1    or reduce that risk?

2              MR. COHEN:   Objection.

3

4    BY MR. HATTEN:

5         Q      Can you answer that question?   Would you

6    agree with that statement?

7         A      My responsibility was to report conditions

8    I observed that in my judgment might pose health hazards to

9    the people in that situation.

10        Q      All right.   Is your general response to the

11   question yes, that you do agree that any risk of death or

12   serious injury from asbestos exposure should be avoided if

13   feasible and available means exist to reduce or eliminate the

14   risk?

15             MR. EDELL:   Can I have the question read

16        back, please, for the witness?

17             (The last question was read by the court

18        reporter.)

19             MR. EDELL:   Was that his opinion when he was

20        in the Navy?

21             MR. HATTEN:   Yes.

22             MR. COHEN:   Objection.

23

24   BY MR. HATTEN:

25        Q      Okay.   Was that your opinion?

Case 1:14-cv-04511-VEC  Document 37-38  Filed 07/09/14  Page 5 of 6

23

1        A        Certainly if I saw any exposure which involved

2    potential danger to the worker or workers, I would recommend

3    the avoidance of such exposures or the protection against them

4    by use of protective equipment and/or ventilation.

5        Q        All right.   So for any recognized risk, if

6    there was feasible and available means to eliminate or reduce

7    the risk, you would try to do so; is that correct?

8        A        Yes.   I would try to do so.

9        Q        All right.   All right.   Now, was it feasible

10   in the 1940's based upon your observations for warning labels

11   to have been placed on the packaging of the asbestos products

12   that the asbestos insulators were using?   Was it feasible?

13       A        I don't know.   Asbestos products on the

14   insulation?

15       Q        On the boxes.   Was it feasible to put a

16   warning label on the boxes?

17       A        So far as I know.

18       Q        All right.   And was there means available in

19   the 1940's when you were in the Navy to either stamp, glue,

20   or print warning labels on the packaging of asbestos products

21   that were used in the shipyards?

22       A        That may have been done.   It's possible.

23       Q        All right.   So would I be correct that you

24   know of no reason why it was either not feasible or not

25   possible for asbestos manufacturers to put a warning on the

1  cartons of their asbestos products that the product could

2  possibly be dangerous; is that correct?

3      A       It could have been done.   It was not done.

4           MR. HATTEN:   All right.   Thank you.   I

5  think that's all.   Thank you.

6           MR. N. SMITH:   Is that it?

7           MR. HATTEN:   Hope I didn't take much more

8  than ten minutes.

9           MR. N. SMITH:   A little more.   If I might

10  have a moment for a break, I would like to consider

11  where I would like to go under the circumstances, and

12  I might be able to save us some time.

13           (The deposition recessed at 9:40 a.m.   At

14  9:55 a.m. the deposition continued as follows:)

15           MR. GLASSER:   What I'm going to do, Ron,

16  starting with Exhibit 32 is simply read a date to you

17  and put a number in the right-hand corner and ask you

18  to officially accept it as an exhibit.   These are

19  from the pile that I referred to roughly three inches

20  high that Mr. Nelson has identified.

21           The one from January 18, 19, 20, 1943, of the

22  Brave Corporation Shipyard --

23           THE WITNESS:   I'm sorry.   I think that is

24  Gravco, isn't it?

25           MR. GLASSER:   The witness is right.