Page 1

1           SUPREME COURT OF THE STATE OF NEW YORK

2                   COUNTY OF NEW YORK

3     - - - - - - - - - - - - - - - - - - - -x

4     IN RE: NEW YORK CITY ASBESTOS LITIGATION

5     - - - - - - - - - - - - - - - - - - - -x

6     APRIL 2012 IN-EXTREMIS LUNG CANCER GROUP,:

7                   Plaintiffs,              :

8     v.                                     :

9     CRANE CO, ET AL.,                      :

10                  Defendants.              :

11    - - - - - - - - - - - - - - - - - - - -x

12          Deposition of DAVID P. SARGENT, JR., PE

13                   Washington, D.C.

14             Tuesday, September 18, 2012

15                     10:00 a.m.

16

17          Deposition of DAVID P. SARGENT, JR., PE, held

18      at the offices of K&L Gates, LLP, 1601 K Street, NW,

19      Washington, D.C, pursuant to agreement, before

20      Cassandra E. Ellis, Registered Professional Reporter

21      and Notary Public of The District of Columbia.

22

23      Job No.:  418229

24      Pages 1 through 199

25      Reported by:  Cassandra E. Ellis, RPR

Page 39

DAVID P. SARGENT, JR., PE

1

2   early to mid `70s.

3        Q    Let me revise my question,

4   with your suggestion.

5             You are unaware of any

6   Navy specification, from the 1920s

7   through the early to mid 1970s, that

8   required a specific warning regarding

9   asbestos?

10        A    Now, when you say

11   specification, are we speaking of a

12   Navy spec, a military spec, a

13   technical specification as used in a

14   procurement contract?

15        Q    Yes, sir.

16        A    I am not aware of any such

17   specification in that time period.

18        Q    Are you aware of any Navy

19   order or direction or memo or

20   suggestion, from the 1920s through the

21   early 19 -- strike that -- through the

22   early to mid 1970s, that required a

23   specific warning regarding asbestos?

24             MR. INSCO:  Objection

25        to form, overbroad.

Page 40

1          DAVID P. SARGENT, JR., PE

2          A    Isn't that the same

3     question?

4          Q    Well, the first one was

5     focused more on specifications,

6     specifically.

7          A    I see.

8          Q    Now I'm broadening it to

9     any order memo direction anything that

10    may be --

11         A    No, sir, I'm not aware of

12    any document, be it technical spec or

13    policy memo or anything else, that

14    required a specific asbestos warning

15    or spiel in that timeframe.

16         Q    Okay.  During the same

17    timeframe, from the 1920s to the early

18    to mid 1970s, are you aware of any

19    Navy specifications, orders,

20    directions or new document that

21    specifically prohibited a warning

22    regarding asbestos?

23         A    As you worded the

24    question, specifically prohibited, no,

25    sir, I'm not aware of a document that

1          DAVID P. SARGENT, JR., PE

2    had prohibited -- prohibitive language

3    in it.

4         Q   Are you aware, from the

5    1920s through the early to mid 1970s,

6    of any Navy specification document,

7    order, direction, that spoke to the

8    content of any asbestos warning?

9         A   Are we speaking about, and

10   maybe I should have asked this

11   earlier, documentation that had to do

12   with shipboard environment, which is

13   my expertise, as opposed to, for

14   instance, industrial activities, which

15   might be different?  I might not know

16   as much about those, so my expertise

17   is really focused on ships, ships when

18   they are in shipyards is certainly

19   part of my expertise.

20        Q   That's a fair limitation.

21        A   And back to the first part

22   of the question?

23        Q   Sure.  Whether you are --

24   are you aware, from the timeframe 1920

25   to the early to mid 1970s, whether

Page 42

1          DAVID P. SARGENT, JR., PE

2     you're aware of any US Navy specs,

3     orders, directions, documents that

4     spoke to the issue of the content of

5     any asbestos warnings?

6               MR. INSCO:

7          Objection, form,

8          overbroad.

9          A     Certainly none that I can

10    think of, I don't believe that I've

11    seen anything like that, and certainly

12    not anything that had to do with

13    shipboard environment.

14         Q     I want to understand when

15    you made the distinction between

16    shipboard and overhauls at a Navy yard

17    versus industrial would your answers

18    be any different if focus was on the

19    industrial end of things or you just

20    don't feel --

21         A     Yes, sir.

22         Q     -- you have enough

23    expertise in that area?

24         A     No, sir, I'm aware that

25    certainly during World War II and

Page 65

1              DAVID P. SARGENT, JR., PE

2       quite detailed in what it was that was

3       allowed and, therefore, detailed on

4       what wasn't allowed.

5              (Exhibit No. 6 was marked.)

6       BY MR. KRISTAL:

7              Q     Let me just mark for you I

8       don't want you to do this with you

9       stretching your memory?

10             A     Thank you.

11             Q     Exhibit 6 is Mil Standard

12      129, the first iteration dated August

13      9th, 1951, if you just flip through it

14      briefly, is that what it purports to

15      be on its cover?

16             A     Yes, sir, it's clearly

17      because it replaces or supersedes a

18      number of different Army, Air Force,

19      and the Navy shipment marking

20      handbook, it would appear to be

21      probably the first in this series of

22      mil standards as opposed to individual

23      service standards.

24             Q     And on the first page we

25      can agree it states the purpose, and

1            DAVID P. SARGENT, JR., PE

2      the purpose of this standard is to

3      provide uniform marking for shipment

4      of material for the armed forces?

5            A    Yes, sir.

6            Q    And that includes the

7      Navy, obviously?

8            A    It does, indeed.

9            Q    Okay.  And also the next

10      section talks about deviations, and it

11      says, quote, when deviations from this

12      standard are found to be necessary,

13      owing to peculiar circumstances,

14      specific instructions shall be

15      obtained from the procuring activity

16      having responsibility for the

17      shipment, end quote; do you see that?

18            A    Yes, sir.

19            Q    So whatever is contained

20      in here, in terms of what the markings

21      are required to be, if someone who was

22      shipping a container that contained an

23      item that they found that there might

24      be a need for deviation could seek

25      permission to put that on there; is

Page 67

1              DAVID P. SARGENT, JR., PE

2      that fair to say?

3              A    Yes, sir.

4              Q    And if you turn to the

5      next page, under unauthorized

6      markings, quote, no markings shall be

7      placed on containers other than those

8      specified or permitted by the

9      procuring activity or those required

10     by regulation and/or statute, end

11     quote; do you see that?

12             A    I do.

13             Q    So that, let's see if we

14     can agree, is saying this is what we

15     want you to put on your containers.

16     But if you seek permission from the

17     Navy or if some other regulation or

18     statute requires you may be permitted

19     to add additional markings; is that

20     fair?

21             A    Yeah.  Yes, sir.

22             Q    If you need to look at

23     this or any other iteration would you

24     agree that this Military Standard 129,

25     for the marking of shipments, did not

Page 68

1          DAVID P. SARGENT, JR., PE

2     prohibit or preclude a manufacturer of

3     a piece of equipment from putting an

4     asbestos warning on the container?

5          A     Well, I -- no, I don't

6     think I would agree with that, as you

7     stated, it certainly it says other

8     markings, when deviations from the

9     standard are found necessary owing to

10    peculiar circumstances specific

11    instructions shall be obtained from

12    the procuring activity, and then,

13    again, where you wrote unauthorized

14    nothing except what's in here shall be

15    here.

16              So if you're saying that

17    an asbestos health warning fit into a

18    category of a deviation then clearly

19    this Mil Standard would allow a

20    discussion about that from a

21    manufacturer to the procuring

22    activity.  Assuming that this Mil

23    Standard was invoked in the contract

24    that was procuring that item.

25          Q     Fair enough.  And the

Page 69

1              DAVID P. SARGENT, JR., PE

2      procuring activity is a term of art,

3      so to speak, that just means whomever

4      is -- whomever in the Navy is

5      purchasing the item, is that the

6      procuring --

7              A     It means which Navy

8      activity issued the procurement

9      contract.

10             Q     Okay.

11             A     BUSHIPS, B-U-S-H-I-P-S,

12     all caps.

13             Q     Got it.  That's

14     abbreviation for Bureau of Ships.

15                   Are you aware of any

16     instance where an equipment

17     manufacturer sought permission from

18     BUSHIPS, pursuant to this military

19     standard, to put an asbestos warning

20     on the container?

21             A     No, sir.

22                   MR. INSCO:  Object to

23             form, assumes facts.

24     BY MR. KRISTAL:

25             Q     Are you aware of the

Page 70

1    DAVID P. SARGENT, JR., PE

2    manufacturer of any

3    asbestos-containing product seeking

4    permission from the Navy, pursuant to

5    Mil Standard 129, to put an asbestos

6    warning on a container?

7            MR. INSCO:   Same

8        objection.

9        A    No.   But I wouldn't

10   suspect it to be since I was not in

11   that part of the Bureau of Ships,

12   particularly at the timeframe we were

13   talking about, I mean, that's not the

14   type of documentation that would have

15   come across my desk, typically.

16       Q    And you had not done a

17   systematic search of documents to find

18   out whether or not that occurred one

19   way or the other?

20       A    Correct, I have certainly

21   not done that.

22       Q    Okay.   Fair to say you,

23   sitting here, don't know one way or

24   the other whether or not the Navy

25   would have permitted a warning by

DAVID P. SARGENT, JR., PE

1
2    either an equipment manufacturer or
3    someone else about asbestos pursuant
4    to this military standard or not?
5            MR. INSCO:
6            Objection, form, misstates
7            testimony, asked and
8            answered.
9        A    Correct, I don't know what
10   the wording would have been, I have no
11   idea.  I mean, I'm not -- I don't have
12   an opinion on that.
13       Q    Fair enough.  Not having
14   an opinion you can put the document in
15   the folder and move on.
16           Let me just ask this, to
17   make sure I'm not -- what you just
18   said, in terms of not having an
19   opinion, would hold true for any
20   revision of Military Standard 129
21   because over the years it did, in
22   fact, change?
23       A    Well, let me make sure I
24   understand --
25       Q    Right.

Page 84

DAVID P. SARGENT, JR., PE

2    United States government was a

3    defendant in asbestos cases starting

4    in the 1980s?

5         A    I'm not surprised.   I

6    wouldn't say that I could quote any

7    details.

8         (Exhibit No. 7 was marked.)

9    BY MR. KRISTAL:

10        Q    Let me mark as exhibit 7

11   let me hand this to you, this is --

12   has a legal caption, in the United

13   States Claims Court GAF corporation,

14   plaintiff, versus the United States of

15   America, defendant, and this document

16   is defendant, United States of

17   America's partial response to

18   plaintiff, GAF corporation's first

19   requests for admissions and

20   interrogatories; do you see that?

21        A    I do.

22        Q    Now, you have received,

23   over the years, plaintiff's answers to

24   interrogatories; correct?

25        A    Yes, sir.

Page 85

1          DAVID P. SARGENT, JR., PE

2          Q    And you've received them

3     in these cases?

4          A    I have.

5          Q    So you understand that

6     during a course of the litigation each

7     side is permitted to propound

8     questions to the other side for the

9     other side to answer under oath?

10         A    Sure.

11         Q    Okay.  If you would turn

12    at the bottom to page 123, there's

13    something in the middle of the page,

14    entitled request for admission number

15    103; do you see that?

16         A    I do.

17         Q    Okay.  Let me read the

18    request that was propounded to the

19    United States of America and then the

20    response and then I'm going to ask you

21    if you agree or disagree, okay?

22         A    Yes, sir.

23         Q    Requests for admission

24    number 103, quote, defendant's

25    specification Mil Standard 129

Page 86

1            DAVID P. SARGENT, JR., PE

2     prescribed the exclusive manner of

3     marking containers for shipment and

4     storage when products were purchased

5     by the defendant pursuant to

6     contracts, purchase orders, or other

7     specifications which require a

8     conformance with defendant's

9     specification Mil Standard 129, end

10    quote; do you see that?

11           A     I do.

12           Q     Okay.  And the response by

13    the United States is, quote, to the

14    extent this request for admission

15    calls for a legal conclusion the

16    United States objects on the grounds

17    that it is not required to give such a

18    conclusion.

19           Without waiving this

20    objection, Mil Standard 129 speaks for

21    itself and the United States denies

22    this request, end quote; do you see

23    that?

24           A     I do.

25           Q     So the United States of

Page 87

1          DAVID P. SARGENT, JR., PE

2     America is denied in this case that

3     Mil Standard 129 was the exclusive

4     manner of marking containers for

5     shipping and storage; do you agree

6     with that?

7                MR. KUENY:   Objection

8              to form, speaks for

9              itself.

10         A    It's really a legal

11    question that I'm not qualified to

12    answer.

13         Q    Well, do you believe that

14    Mil Standard 129 was the exclusive

15    manner of marking containers for

16    shipment and storage in the Navy?

17         A    Exclusive?  No, sir.

18         Q    Okay.

19         A    Again, as I said earlier,

20    if it was specifically invoked in a

21    contract as the technical guidance

22    then it would apply to that contract.

23    But it wasn't invoked in all

24    contracts.

25              And it would be my opinion

Page 88

```
 1          DAVID P. SARGENT, JR., PE
 2    that there were certainly situations
 3    in other cases that had different
 4    standards applied to them.
 5          Q    Okay.  Well, let me then
 6    re-ask the question.  The request for
 7    admission number 103 asks, and let me
 8    just ask you, do you agree or disagree
 9    that specification Mil Standard 129
10    described the exclusive manner of
11    marking containers for shipment and
12    storage when products were purchased
13    by the United States pursuant to
14    contracts, purchase orders, or other
15    specifications which required
16    conformance with MILspec or Mil
17    Standard 129?
18          A    Your question was, do I
19    agree with that?
20          Q    Yes.
21          A    Yes, you read that
22    correctly.
23          Q    I'm not asking you if I
24    read it correctly.  I'm asking if you
25    agree with the statement.
```

1      DAVID P. SARGENT, JR., PE

2      A    Yes, sir, but I would add

3  to that that as we have read out of

4  129 if a deviation from 129 is

5  required there's procedures within 129

6  where that can occur.

7      Q    Okay.  So deviations in

8  the markings that were required by

9  standard -- Mil Standard 129 were

10  allowed if approved?

11      A    They were certainly

12  allowed to be considered.

13      Q    Right.  And the Navy could

14  reject or accept those deviations?

15      A    Whoever the procuring

16  activity was.

17      Q    Which would include some

18  division or department of the Navy?

19      A    Certainly.

20      Q    If you turn to page 126,

21  requests for admission number 106,

22  quote, At no time prior to 1964 did

23  the defendant's specification for

24  marking for shipment and storage Mil

25  Standard 129 permit the placement by

Page 90

```
 1            DAVID P. SARGENT, JR., PE
 2    plaintiff of a label or marking
 3    concerning the hazards known to
 4    defendant regarding exposure to
 5    asbestos dust, end quote; do you see
 6    that?
 7            A    I do.
 8            Q    And the United States, if
 9    you look at the response, denied that;
10    correct?
11            A    Let me read it.
12            Q    Sure.
13            A    Sounds reasonable.
14            MR. KUENY:
15            Objection, the answer
16            speaks for itself.
17            A    Again, you say denied,
18    denied, yes, sir, I think that's what
19    it says, but it --
20            Q    Okay.  Now let me ask you
21    --
22            A    But not being a lawyer I
23    don't want to misread legal language.
24            Q    Well, and it says, and the
25    United States denies; correct?
```

Page 91

DAVID P. SARGENT, JR., PE

1              MR. INSCO:  I'll

2           object, this also calls

3           for a legal conclusion and

4           knowledge of the Rules of

5           Civil Procedure where this

6           case was pending.

7              MR. KRISTAL:  Let me

8           --

9              MR. KUENY:  And I'll

10          just object, the complete

11          answer speaks for itself.

12  BY MR. KRISTAL:

13          Q    Let me read the complete

14  answer, quote, To the extent this

15  requests call for a legal conclusion

16  the United States objects on the

17  grounds that it is not required to

18  give such conclusion.

19          Without waiving this

20  objection Mil Standard 129 speaks for

21  itself and the United States denies;

22  do you see that?

23          A    I do.

24          Q    Okay.  Is your

Page 92

```
 1           DAVID P. SARGENT, JR., PE
 2    understanding of that language that
 3    the United States is denying that Mil
 4    Standard 129 would not permit a
 5    placement by a manufacturer of a label
 6    or marking concerning the hazards of
 7    asbestos?
 8           MR. KUENY:
 9           Objection, the answer
10           speaks for itself.
11      A    I quite honestly don't
12    know what it's denying.  I guess it's
13    -- the request was -- see, when I read
14    the request it doesn't sounds like a
15    request to me, it sounds like a
16    statement.
17      Q    Right, it is a statement,
18    and the United States is either
19    admitting or denying it?
20      A    Oh, so asking -- excuse
21    me, sir, I -- now I understand.
22           So the request to the
23    United States is to agree with that to
24    admit that that is true.
25      Q    Or deny the request?
```

Page 93

```
 1              DAVID P. SARGENT, JR., PE
 2         A    And they deny that prior
 3    statement is true.
 4         Q    That's right.
 5         A    That's what this document
 6    says.
 7         Q    Do you agree or deny that
 8    the statement, request for admission
 9    number 106, is true?  Do you agree
10    it's true or do you deny it's true?
11         A    I have no idea.  It's a
12    legal question.  I certainly am not an
13    expert in what happened in prior
14    versions of 129.  I have no basis
15    whether -- to know whether that
16    statement is true or not.  What it
17    says is at a given timeframe, prior to
18    1964 --
19         Q    Right.
20         A    -- other versions of that
21    military standard didn't permit
22    something.
23              Now, whether that means
24    they didn't have that deviation clause
25    I don't know what it means.  I'm not
```

Page 94

1            DAVID P. SARGENT, JR., PE

2     qualified to answer.  I have not

3     reviewed any of those prior versions.

4            What it says is, is the

5     United States government, whatever the

6     -- I suppose it's the Department of

7     Justice in this case, made the

8     statement that they do not agree with

9     that admission.

10          Q    Okay.

11          A    But I can't speak for the

12    United States government to see

13    whether that is right or wrong.

14          Q    I'm not asking you to

15    speak for the United States

16    government.  I'm asking you, as you

17    sit here today, in your opinion, do

18    you agree or disagree with the

19    following:  At no time prior to 1964

20    did specification Mil Standard 129

21    permit the placement by a manufacturer

22    of a label or marking concerning the

23    health hazards about asbestos?

24          A    Without reviewing this

25    entire 1951 version, which clearly is

Page 95

1          DAVID P. SARGENT, JR., PE

2     prior to 1964.

3          Q     Mm-hmm.

4          A     I would say that, from my

5     memory, there is no mention of

6     asbestos warnings in there.

7               And so the statement that

8     it didn't permit placement would say

9     that, as written, that did not,

10    doesn't go into deviations or not, it

11    says, the standard, as written, did

12    not allow.  I would agree with that

13    because it didn't require.

14         Q     It says, "At no time prior

15    to 1964 did the Mil Standard 129

16    permit an asbestos warning"?

17         A     Correct.

18         Q     Do you agree that it did

19    or are you saying it didn't?

20         A     It did not permit, it did

21    not require and therefore did not

22    permit.

23         Q     Well, there's a difference

24    between requiring something and

25    permitting something, we can agree on

Page 96

1              DAVID P. SARGENT, JR., PE

2        that; correct?

3              A     Yes, sir, but if you go

4        back to what I've said several times

5        before, the procurement process, which

6        includes this Mil Standard, is

7        direction on what will be done, it is

8        not a document of what you cannot do,

9        so if it's not in there that it's

10       required to place that warning on

11       there then it is not permitted, at

12       least not without a deviation.

13             Q     Right.  And it -- and Mil

14       Standard 129 allowed for the

15       consideration of a deviation; correct?

16             A     It did.

17             Q     Okay.

18             A     In 1951 version, at least.

19             Q     Okay.

20             A     And I'm sure every other

21       version.

22             Q     All right.  And are you

23       saying that at no time prior to 1964

24       would the Navy have allowed a

25       deviation for a manufacturer to put an

Page 97

1          DAVID P. SARGENT, JR., PE

2    asbestos health hazard warning?

3          A    I have no idea.  What I'm

4    saying is that the mil standard that

5    you have presented to me, dated 1951,

6    does not have a requirement to put

7    such a warning on there.

8          Q    Okay.  And nor --

9          A    Therefore, this statement,

10   which you asked me if I agree with, I

11   agree with the government's position

12   that that was not required and,

13   therefore, not permitted in that

14   version.

15         Q    The government is saying

16   the exact opposite of what you're

17   saying, do you understand that?

18         A    No.

19         Q    Okay.  There's an

20   affirmative statement at no time prior

21   to 1964 did Mil Standard 129 permit

22   the placement of a label concerning

23   the hazards of asbestos, that's the

24   statement; right?

25         A    Yes, sir.

Page 98

1        DAVID P. SARGENT, JR., PE

2        Q    And the United States is

3   denying that, they're denying that at

4   no time prior to 1964 did Mil Standard

5   129 permit an asbestos warning?

6              MR. KUENY:

7              Objection, the document

8              speaks for itself.

9              MR. KRISTAL:  It does

10             speak for itself.

11             MR. KUENY:  They're

12             not denying the fact.

13             MR. INSCO:  I'm also

14             going to object, this has

15             been asked and answered,

16             you've done this twice,

17             now.  I mean, the document

18             this deals with the United

19             States' litigation

20             strategies and the

21             position they took as a

22             defendant.

23             MR. KRISTAL:  So

24             you're saying the United

25             States is lying in a

Page 99

```
1          DAVID P. SARGENT, JR., PE
2          litigation?  Okay.  Your
3          objections are noted.
4    BY MR. KRISTAL:
5          Q    You can answer.
6          A    Again, to the extent that
7    this request calls for a legal
8    conclusion the United States objects
9    that it is not -- on the grounds that
10   it is not required to give such a
11   conclusion.  I have no idea whether
12   that's true or not, that's a legal
13   position.
14          But then based on that,
15   and without waiving -- waiving its
16   objection, the United States denies.
17         Q    That's right.
18         A    So it denies the admission
19   that prior to 1964 Mil Standard 129 --
20         Q    -- would not have
21   permitted.  They're denying that it
22   would not have permitted an asbestos
23   warning?
24         A    Boy, there's a triple
25   negative.  Denying it would not have
```

Page 100

1            DAVID P. SARGENT, JR., PE

2     permitted?

3            I used to work for a

4     company that used to learn to say I'm

5     not so sure that I dare not to do

6     that, and I've never figured out what

7     that means.

8            Q    Well, I don't want your

9     answer unless you really understand

10    what it's asking.

11           It says, at no time prior

12    to 1964 did Mil Standard 129 permit an

13    asbestos warning; right?

14           A    Yeah, that's what it says.

15           Q    Okay.  And the United

16    States is denying that; right?

17           A    What does it mean that it

18    calls for a legal conclusion and that

19    it's their opinion they don't need to

20    give that?  I don't know -- I'm not a

21    legal person.

22           Q    Nor do you need to -- I'm

23    asking you --

24           A    Well, that's your opinion.

25    I'm not sure I agree with you that I

Page 101

1            DAVID P. SARGENT, JR., PE

2      don't need to know what that means.

3            Q    Let me ask you this:   In

4      your opinion, prior to 1964, did Mil

5      Standard 129 permit the placement of

6      an asbestos hazard warning?

7            A    No, sir.

8            MR. INSCO:  Asked and

9            answered.

10           A    I don't believe they did.

11           Q    Okay.  So if the United

12     States -- well, we don't need to --

13           A    It did not permit it, in

14     specific words, saying you can do

15     this, all right?  There was a

16     deviation process --

17           Q    Right.

18           A    -- where it could have

19     been considered.

20           Q    Right.

21           A    I do not believe 129, at

22     any point in that version 1951, that

23     I've seen, speaks to asbestos up to

24     the timeframe we're talking about.

25           Q    I understand that, are you

1    DAVID P. SARGENT, JR., PE

2    aware of any instance at any point in

3    time where a manufacturer of either a

4    piece of equipment or an

5    asbestos-containing product, itself,

6    requested a deviation pursuant to Mil

7    Standard 129?

8         A    No, sir.

9         Q    To add an asbestos hazard

10   one?

11        A    I'm not personally aware

12   of any such situation.

13        Q    So, therefore, you're not

14   aware of what the Navy's response

15   would have been in terms of whether

16   that would or wouldn't have been a

17   permitted deviation?

18        A    That's accurate.

19        Q    Okay.

20        A    I have an opinion what it

21   would have been but I don't know for

22   certain.

23        Q    And your opinion is based

24   on -- is your opinion based on any

25   Navy document?

Page 103

1          DAVID P. SARGENT, JR., PE

2          A    No, sir, it's based on 35

3    years of experience of working as a

4    naval officer, an acquisition

5    professional, and developing

6    instincts, if you will, and a

7    knowledge base of not only what the

8    Navy does but the rationale for why

9    decisions are made.

10         Q    Were you ever asked, in

11   your career in the Navy, to review a

12   requested deviation pursuant to Mil

13   Standard 129?

14         A    Not that I recall.

15         Q    Was anyone under your

16   direction, to your awareness, asked to

17   do that?

18         A    I have no idea.  Quite

19   possibly.

20         Q    Have you ever engaged in

21   any discussions with anyone at the

22   time you were in the Navy regarding

23   whether or not Mil Standard 129 would

24   have permitted an asbestos warning?

25         A    No, sir, I don't recall